589 S.E.2d 775

The STATE, Respondent,

v.

Thomas BRYANT, Appellant.

No. 3690.

Court of Appeals of South Carolina.

Heard May 14, 2003.

Decided Nov. 3, 2003.

Rehearing Denied Dec. 18, 2003.

486

Assistant Appellate Defender Robert M. Dudek, of the SC Appellate Defense, of Columbia, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, all of Columbia; and Solicitor Warren Blair Giese, of Columbia, for respondent.

HOWARD, Judge:

Thomas Bryant was convicted of murder and unlawful possession of a firearm. The circuit court sentenced him to life imprisonment without parole for murder and five years for possession of the firearm, to run concurrently. Bryant appeals, arguing the circuit court erred by admitting evidence of his prior bad acts and convictions. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Bryant is a paraplegic who was staying at a Days Inn Hotel ("the Hotel") in Columbia, South Carolina. Bryant met Daniel Austin at a nearby nightclub.

At approximately 3:30 a.m. on July 23, 1999, Austin left the nightclub with Bryant. Nellie Connell, the front desk attendant at the Hotel, observed Austin and Bryant together at approximately 3:30 a.m., and Austin was pushing Bryant in his wheelchair. According to Connell, Austin subsequently came to the front desk and requested a key to Bryant's room. Connell gave Austin a key to Bryant's room.

Between 3:30 a.m. and 4:00 a.m., Kevin Hawkins, a guest at the Hotel, observed Bryant in the Hotel hallway. Bryant had a scrape on his nose and his pants were in his lap. Bryant told Hawkins he had been beaten and asked Hawkins to go to the front desk and ask for help. Hawkins went to the front desk and spoke to Connell, and Connell indicated she would call the authorities. As Connell was telephoning the police, she heard gunshots.

When the police arrived, Austin was lying in the breezeway bleeding from gunshot wounds, and Bryant was in his hotel room firing a gun through the door. After a standoff lasting approximately twenty minutes, officers heard one final shot. The officers entered Bryant's room and found Bryant on the floor with a self-inflicted gunshot wound to his stomach. Austin died from his gunshot wounds.

Following a jury trial, Bryant was convicted for murdering Austin and for unlawfully possessing a firearm. He was sentenced to life imprisonment without parole for murder and five years for possession of the firearm, the sentences to run concurrently. Bryant appeals.

## LAW/ANALYSIS

### I. Prior Bad Acts

█ Bryant argues the circuit court erred in admitting testimony about Bryant's prior bad acts. We disagree.

█ "The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion." *State v. Saltz*, 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001). Furthermore, the admission of reply testimony is within the trial court's discretion, and a reviewing court will not find an abuse of discretion "if the testimony is arguably contradictory of and in reply to earlier testimony." *State v. Todd*, 290 S.C. 212, 214, 349 S.E.2d 339, 340 (1986).

During direct examination in the state's case, John Campbell testified he first encountered Bryant at the nightclub a few days before the night of Austin's murder. Campbell was the bouncer for the club, and he stated he kept a "close eye" on Bryant on the night of the murder.

Campbell's testimony indicated Austin was not combative toward Bryant on the evening of the murder. Campbell testified Bryant arrived at the nightclub on the night of the murder between 8:00 p.m. and 8:30 p.m. Somewhere around 11:00 p.m., Austin entered the nightclub, and shortly thereafter, Bryant and Austin were "very chummy, [and] real friendly toward each other." Between 3:15 a.m. and 3:30 a.m., Austin and Bryant attempted to leave the nightclub, whereupon Bryant fell out of his wheelchair and required assistance by both Campbell and Austin to get back in his chair. Bryant and Austin then left the nightclub.

During cross-examination, Bryant's counsel attacked Campbell's independent ability to remember the events of the night of the murder, implying his recollection had been supplemented by his pre-trial discussions with the solicitor.

During re-direct examination, the solicitor sought to introduce testimony from Campbell that Bryant had threatened Campbell during their first encounter to explain why Campbell had maintained a close eye on Bryant on the night of the murder. Over Bryant's objection, the court allowed Campbell's testimony, ruling evidence that Bryant had previously threatened Campbell was relevant to establish Campbell's basis for focusing on Bryant on the night in question. In doing so, the court provided the following limiting charge to the jury: "Now, there was also testimony in the case about conduct of a defendant toward a witness in the case. That testimony was introduced in regard to the credibility of the witness who gave it and must not be considered against the character of the defendant."

Viewing the testimony in light of our standard of review, we conclude there was no abuse of discretion in the admission of this evidence. Bryant specifically attacked Campbell's credibility as to his observation of Bryant and Austin, implying Campbell's memory had been supplemented by the solicitor because he had no reason in a crowded bar to pay close attention to Bryant or Austin on the night of the murder. Campbell's redirect testimony was relevant on this credibility issue. The solicitor was entitled to introduce testimony "arguably contradictory of and in reply to earlier testimony" to strengthen Campbell's credibility once attacked. *Todd,* 290 S.C. at 214, 349 S.E.2d at 340. Therefore, Bryant's argument is without merit.

## II.  Prior Convictions

██  Bryant argues the circuit court erred by admitting impeachment evidence of his prior firearms convictions because the prejudicial effect of the convictions outweighed their probative value.

██  The admission of prior convictions to impeach the credibility of a defendant is a matter within the sound discretion of the trial court, and thus, its decision will not be reversed on appeal absent an abuse of discretion. *Green v. State,* 338 S.C. 428, 433, 527 S.E.2d 98, 101 (2000). An abuse of discretion occurs when the conclusions of the circuit court either lack evidentiary support or are controlled by an error of

law. *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001).

Rule 609(a)(1) provides prior convictions can be used to impeach the accused when: 1) the crime was punishable by death or imprisonment in excess of one year, and 2) the court determines the probative value of admitting the evidence outweighs its prejudicial effect. Rule 609(a)(1), SCRE.

In weighing the probative value of prior convictions, the circuit court should consider all relevant factors including but not limited to the following: "1) the impeachment value of the prior crime; 2) the point in time of the conviction and the witness's subsequent history; 3) the similarity between the past crime and the charged crime; 4) the importance of the defendant's testimony; and 5) the centrality of the credibility issue." *State v. Colf,* 337 S.C. 622, 627, 525 S.E.2d 246, 248 (2000); *Green,* 338 S.C. at 433, 527 S.E.2d at 101.

Prior to Bryant's testimony, the solicitor indicated he intended to impeach Bryant with evidence of prior convictions including voluntary manslaughter in 1987, possession of a firearm in 1997, and pointing and presenting a firearm in 1998. The circuit court first analyzed whether to admit the voluntary manslaughter conviction using the *Colf* factors. The circuit court refused to admit the conviction, ruling the probative value of the conviction was outweighed by the prejudicial effect. In so ruling, the circuit court made the following analysis:

I think there is some substantial impeachment value to it ... as ... almost every two years various things that have come up with the defendant. And of course, the point in time, obviously, still works against allowing it, that was 16 years ago. *The third factor, the similarity between the two, is obviously significant ... [for probative value]* .... But it's also extremely significant for the value of prejudice that it brings into the issue. As far as the importance of the defendant's testimony ... it is important. [Bryant's defense witnesses] didn't help his case too much.... [Additionally,] the credibility issue is central.

(emphasis added).

However, the circuit court did admit Bryant's convictions for possession of an unlawful weapon in 1997 and pointing and presenting in 1998, ruling as follows:

*[The other two convictions] are both over a year old, well within the 10–year period, and frankly, do indicate within themselves consistency as well as when considered with the manslaughter conviction* .... And I realize certainly ... [the] prejudicial issue related to these, but frankly, I think under those circumstances the probative value does substantially outweigh the prejudice that could be directed from the toward the defendant from it.... [Furthermore,] the fact that he may tend to get in trouble from time to time, while it has a certain amount of prejudice in it, also, does include that issue of whether or not he's worthy of belief.

(emphasis added).

Bryant contends this analysis, combined with the statements made during the circuit court's voluntary manslaughter analysis, demonstrates the circuit court admitted the prior convictions based on the improvident belief the evidence was admissible to demonstrate propensity.

Although, viewed in isolation, the statements made by the circuit court could be construed to indicate the circuit court allowed the evidence to prove propensity, we must view the circuit court's statements as a whole to determine its reasoning. *See State v. Evans,* 354 S.C. 579, 584, 582 S.E.2d 407, 410 (2003).

Reviewing the circuit court's statements as a whole reveals the circuit court allowed the testimony based on its belief the testimony could lead to an inference Bryant was unworthy of credibility because of his prior convictions. This is an appropriate reason to admit prior convictions. *See Green,* 338 S.C. at 433, 527 S.E.2d at 101 (holding, under certain circumstances, admitting prior, similar convictions is appropriate to impeach the credibility of a defendant).

Furthermore, evidence exists within the record to support the circuit court's decision to admit the evidence.[1]

---

1. Both the conviction for possession of a firearm and the conviction for pointing and presenting a firearm are punishable by imprisonment in excess of one year. *See* S.C.Code Ann. § 16–23–30(e) (2003) (stating it is unlawful for any person who has been convicted of a violent crime to possess a pistol); S.C.Code Ann. § 16–1–90(F) (2003) (stating possession of a pistol by a person convicted of a violent crime is a Class F

The state presented evidence indicating Bryant possessed the requisite intent for murder. In response, Bryant introduced the testimony of Johnny Stapleton, intending to demonstrate Bryant shot Austin in self-defense.

Although Stapleton could not remember giving the police a statement on the night of the murder because he was "highly intoxicated," he acknowledged a statement bearing his signature in which he indicated Austin, the victim, was intoxicated and demonstrated violent behavior on the night of the murder. Bryant then testified in his defense, asserting he shot Austin in self-defense. The state sought to introduce evidence of Bryant's prior convictions to impeach his credibility. After analyzing the *Colf* factors and conducting a meaningful analysis pursuant to South Carolina Rules of Evidence, Rule 609(a)(1), the circuit court admitted the evidence of prior convictions.

Viewing the evidence in light of our standard of review, the record indicates Bryant and Austin were the only people present when the shooting occurred. Additionally, the only other defense witness, Stapleton, did not remember the events of the night of the murder. Thus, Bryant's defense is essentially predicated upon his version of the facts. Furthermore, the convictions were not stale. Rather, the convictions were fairly close in temporal proximity to the charged offense.

Given the importance of Bryant's testimony to his defense, and the state's burden of discounting his testimony to prove

felony); S.C.Code Ann. § 16-1-20(A)(6) (2003) (stating a Class F felony is punishable by not more than five-years imprisonment); *See* S.C.Code Ann. § 16-23-410 (2003) (stating the crime of pointing and presenting a firearm is a felony punishable by not more than five-years imprisonment). Thus, we limit our analysis to whether the circuit court abused its discretion in its application of the *Colf* factors. *See* Rule 609(a)(1), SCRE (stating prior convictions can be used to impeach the accused when: 1) the crime was punishable by death or imprisonment in excess of one year, and 2) the court determines the probative value of admitting the evidence outweighs its prejudicial effect); *Colf*, 337 S.C. at 627, 525 S.E.2d at 248 (holding in weighing the probative value of prior convictions, the circuit court should consider all relevant factors including but not limited to the following: "1) the impeachment value of the prior crime; 2) the point in time of the conviction and the witness's subsequent history; 3) the similarity between the past crime and the charged crime; 4) the importance of the defendant's testimony; and 5) the centrality of the credibility issue.").

the elements of murder, we hold the circuit court, having conducted a *Colf* analysis, was within its discretion to admit Bryant's prior convictions to impeach his credibility.

In so holding, we note, our supreme court has cautioned the bench and bar that admitting prior convictions similar to the charged offenses is inherently prejudicial and should only be done rarely. *See Colf,* 337 S.C. at 622, 525 S.E.2d at 246 ("[E]vidence of similar offenses inevitably suggests to the jury the defendant's propensity to commit the crime with which he is charged. This risk is not eliminated by limiting instructions. Therefore ... 'evidence of any similar offense should be admitted only rarely ....' ") (quoting *United States v. Beahm,* 664 F.2d 414, 419 (4th Cir.1981)). However, where, as here, the circuit court has conducted the appropriate analysis and evidence exists to support its ruling, we decline to disturb that ruling.

## CONCLUSION

Based on the foregoing, Bryant's convictions are

**AFFIRMED.**

GOOLSBY, J., concurs.

BEATTY, J., dissents in a separate opinion.

BEATTY, J.:

I respectfully dissent. I believe the trial judge erred in the admission of defendant's prior convictions for possession of an unlawful weapon, and pointing and presenting a firearm. The prejudicial effect clearly outweighed the probative value of these prior convictions. The trial court admitted the prior convictions solely because the crimes indicated a tendency to get in trouble. The trial court's reasoning amounted to prohibited character evidence under 404(b), SCRE.

A fundamental principle of our criminal jurisprudence is that an accused shall only be tried on the offense charged, indicted, and currently before the court. Thus, the courts, state and federal, closely scrutinize the admission of prior convictions of the accused. *See Green v. State,* 338 S.C. 428, 433, 527 S.E.2d 98, 101 (2000). As a result, similar prior

convictions are not *per se* inadmissible; however, they are generally excluded.[2]

In *Green v. State*, our supreme court opined, "admission of evidence of a similar offense often does little to impeach the credibility of a testifying defendant while undoubtedly prejudicing him. The jury, despite limiting instructions, can hardly avoid drawing the inference that the past conviction suggests some probability that defendant committed the similar offense for which he is currently charged." 338 S.C. at 434, 527 S.E.2d at 101 (quoting *United States v. Beahm*, 664 F.2d 414, 418–419 (4th Cir.1981)). The *Green* court set forth factors to be considered when weighing probative value against prejudicial effect.

The *Green* court provided the following factors for consideration when determining whether to admit evidence:

1. The impeachment value of the prior crimes.

2. The point in time of the conviction and the witnesses' subsequent history.

3. The similarity between the past crime and the crime charged.

4. The importance of the defendant's testimony.

5. The centrality of the credibility issue.

*Id.; see also State v. Colf*, 337 S.C. 622, 525 S.E.2d 246 (2000).

Here, the trial court considered the *Colf* factors when in determining whether to allow the manslaughter conviction into evidence. Notwithstanding the trial court's *Colf* analysis of the prior manslaughter conviction, the record does not clearly reflect similar treatment of the two additional prior convictions. In fact, the record only reflects an indirect consideration of 609(a)(1), and (b) SCRE, absent the required *Colf* considerations, as it relates to these prior convictions.

---

2. "We decline to hold similar prior convictions inadmissible in all cases. Trial Courts must weigh the probative value of the prior conviction against their prejudicial effect to the accused. In the special case, where the prior conviction is for the same offense as that for which the defendant is being tried, the trial court generally will not permit the government to prove the nature of the offense ... [it] would amount to unfair prejudice." *Green*, 338 S.C. at 433 n. 5, 527 S.E.2d at 101 n. 5 (internal citation omitted).

During the colloquy on the admissibility of the prior convictions the trial court stated:

And, of course, the credibility issue is central. I think when it comes down to it, in order for the jury to be able to see the credibility of this defendant as well as any other witness, they should be able to see all of these, but it's probably risky to let that in. So I'm going to have to rule that the manslaughter conviction would not be allowed to be used.

However, the other two convictions, no question, would be allowed to be used. They are both over a year old, well within the 10–year period and, frankly, do indicate within themselves consistency as well as when considered with the manslaughter conviction. So I don't think there's any question that all of them do.

And I realize certainly, Mr. Strickler, that prejudicial issue related to these, but, frankly, I think under those circumstances the probative value does substantially outweigh the prejudice that could be directed toward the defendant from it. So with that in mind, I'm going to allow the convictions that have been requested within the 10–year period but not the manslaughter conviction.

The trial court further stated:

[I]t comes down to whether or not you present these to the jury to let them decide whether they consider the defendant worthy of belief or how much his worthiness of belief is affected by these convictions.

And the fact that he may tend to get in trouble from time to time, while it has a certain amount of prejudice in it, also, does include that issue of whether or not he's worthy of belief.

It is clear that the trial judge did not properly consider the *Colf* factors. It appears that the trial judge improperly concluded that significant probative value exist merely because of the similarity of the crimes. Absent more, the court's reasoning is erroneous.

The prior convictions involved possession and pointing a gun, the current charge involves the use of a gun in a homicide. The prejudicial effect is inescapable. Further, it is evident that the trial court's conclusion that the probative

value of the prior convictions outweighed the prejudicial effect was based upon the court's belief that the prior convictions, when considered with the manslaughter conviction, indicated that the defendant had a tendency to get in trouble. That tendency to get in trouble raised the issue of whether the defendant is worthy of belief. The foregoing amounts to no more than impermissible character evidence. 404(b), SCRE.

The defendant claimed self-defense. The record does not reflect overwhelming contrary evidence of his guilt; the only witnesses to the homicide were the defendant and the deceased. The defendant's testimony was important and his credibility was a central issue in the case. The prior convictions were an attack on the defendant's character and yielded very little if any impeachment value. Absent impeachment value, there is no probative value in the admission of the prior convictions in this case. Therefore, I would reverse the trial court's ruling.